IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN COLEMAN, <br> Plaintiff, <br><br> v. <br><br> AMERIHEALTH CARITAS, <br> Defendant. | CIVIL ACTION <br><br><br><br> NO. 16-3652 |

DuBois, J.                                                                                                                June 2, 2017

**M E M O R A N D U M**

This employment discrimination case arises out of the termination of plaintiff Justin Coleman's employment by defendant Amerihealth Caritas. Coleman alleges that he was discriminated against and ultimately terminated based on his requests for medical and family leave, disabilities, and gender/sexual orientation. He asserts claims against Amerihealth for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e), *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1100, *et seq*. Presently before the Court is Amerihealth's Motion to Dismiss Coleman's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or to dismiss Count IV (violation of the PFPO) pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the Court grants in part and denies in part Amerihealth's Motion to Dismiss.

**I.      BACKGROUND**

The facts as alleged in Coleman's Amended Complaint are as follows. Coleman, a Philadelphia resident, was hired by Amerihealth on October 1, 2012, to work at its Philadelphia location. Am. Compl. ¶¶ 8, 9, 14. Beginning in the summer of 2013, Coleman, who is gay, was verbally harassed by a co-worker, Shaun Johns. Am. Compl. ¶¶ 17-18. Johns told Coleman "you look like a faggot" and "your hair looks gay." Am. Compl. ¶ 18. In July 2013, Johns punched Coleman

1

during work. Am. Compl. ¶ 19. When Coleman "protested," Johns replied, "faggot, I'll punch you in your face." Am. Compl. ¶ 20.

In November 2013, after a period allegedly with similar comments, Johns again punched Coleman at work. Am. Compl. ¶ 21. Following that altercation, Coleman complained to his supervisors, Wanda Childs and Kelvin Alexander. Am. Compl. ¶ 22. Childs and Alexander attempted to dissuade Coleman from reporting the attacks and comments to Human Resources, because Childs was a friend of Johns. Am. Compl. ¶¶ 23-24. Childs again attempted to dissuade Coleman from informing Human Resources in a subsequent conversation, stating that she would contact Johns directly about the issues. Am. Compl. ¶¶ 25-26.

Coleman subsequently informed Michael Greevy of Amerihealth's Human Resources Department of Johns' conduct. Am. Compl. ¶ 28. As a result, Johns was terminated. Am. Compl. ¶ 29. Thereafter, Childs and Martha Bailey, another supervisor, "began to themselves make derogatory comments to and about Coleman regarding his gender/sexual orientation, including spreading a false rumor that Coleman was sleeping with Alexander, Coleman's male direct supervisor." Am. Compl. ¶ 30. Coleman reported these comments to Greevy but no action was taken to address his complaints. Am. Compl. ¶ 31.

Childs and Bailey also began to treat Coleman differently with respect to discipline and scheduling. Am. Compl. ¶ 32. They began to scrutinize Coleman's and Alexander's days off from work, suggesting that overlapping days indicated the two were romantically involved. Am. Compl. ¶ 34. Coleman continued to lodge complaints through March or April 2014 with Greevy and HR Business Partner Diana Zumbach, despite Greevy's frustration over Coleman's complaints. Am. Compl. ¶ 35. At that point, Coleman spoke to Director Charlita Tate about his complaints. Am. Compl. ¶ 35.

Soon after the discussion with Tate, Coleman was transferred to a new department, where he was supervised by Dwayne Robinson. Am. Compl. ¶ 36. This transfer resulted in a significant reduction in overtime for Coleman. Am. Compl. ¶ 37. However, Coleman soon began to experiences issues with Robinson, who was friendly with Coleman's former supervisors. Am. Compl. ¶ 38. Robinson repeatedly made comments to Coleman about his tone, stating that "you need to work on your tone," "you need to buy a mirror and smile in the mirror so you don't sound like you do," and "you sound smug." Am. Compl. ¶¶ 47-48. Coleman, who has a "stutter, which is aggravated by stress," and "suffers from digestive issues" that have lasted over six months, took intermittent FMLA leave for his digestive issues beginning in March or April 2014. Am. Compl. ¶¶ 43-46.

When Coleman approached Robinson to request permission to work from home due to his medical issues, Robinson told him that "you need to come to work to get the shifts you want." Am. Compl. ¶ 51. Coleman sought additional FMLA leave on June 14, 2014, to care for his mother, who suffered from Lupus. Am. Compl. ¶ 52. After approval of that request, Coleman requested an earlier shift for one day and Robinson informed him that "I understand there's [sic] personal issues, but we have to cater to the company" and denied the request. Am. Compl. ¶ 53. Coleman was also denied promotion to a trainer position in July 2014, after previously being denied a promotion to provider maintenance position. Am. Compl. ¶ 15, n.1.

On July 28, 2014, Coleman took a half-day of FMLA leave. Am. Compl. ¶ 54. The following day, Coleman met with Robinson and stated that "I feel like you have a problem with me because of how others feel about me," to which Robinson responded "I'm sorry that you feel that way" and "you miss work a lot," and commented on Coleman's tone. Am. Compl. ¶¶ 55-56. When Coleman referenced his "exceptional performance numbers," Robinson responded that "it is not always about the numbers." Am. Compl. ¶¶ 57-58. Coleman was terminated the next day, July 30, 2014, by Robinson and Greevy. Am. Compl. ¶ 59. In its explanation for Coleman's termination, Amerihealth

3

stated that Coleman "dropp[ed] calls." Am. Compl. ¶ 60. Coleman claims that he had documented proof that each "dropped call" was properly reported as dropped due to technical difficulties, in accordance with company policy. Am. Compl. ¶ 61.

On July 1, 2016, Coleman filed a one count Complaint against Amerihealth, alleging violation of the FMLA. On February 28, 2017, the PCHR issued Coleman a Right to Sue letter and the EEOC also issued a Right to Sue letter on his federal claims on March 17, 2017. Am. Compl. ¶ 6. Coleman filed an Amended Complaint on March 20, 2017, adding claims for discrimination and retaliation under the ADA and the PFPO and gender stereotyping and sexual orientation discrimination under Title VII and the PFPO. Amerihealth filed its Motion to Dismiss on April 10, 2017.

## II. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

## III. DISCUSSION

The Court considers each of Coleman's claims in turn.

A.      Retaliation Claim under the FMLA

In its Motion to Dismiss, Amerihealth argues that Coleman has not shown that his termination was retaliation for taking FMLA leave. The Court disagrees.

To state a claim for retaliation under the FMLA, an employee must allege "that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights." *Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 256 (3d Cir. 2014). The parties agree that Coleman invoked his right to FMLA leave and that his termination qualifies as an adverse employment action. Thus, the only element at issue is whether or not Coleman's termination was causally related to his request for FMLA leave.

Coleman was fired on July 30, 2014, two days after he took a half-day of FLMA leave on July 28, 2014. This brief two day period between his leave and termination is "unduly suggestive" and creates an inference of causality. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) ("Although there is no bright line as to what constitutes unduly suggestive temporal proximity, [a period of seven days is] sufficient at the prima facie stage."). Coleman also alleges that Robinson, his supervisor, told Coleman, "you need to come to work to get the shifts you want," Am. Compl. ¶ 51, "I understand there's personal issues, but we have to cater to the company" when denying Coleman's request for an earlier shift, Am. Compl. ¶ 53, and "you miss work a lot," Am. Compl. ¶ 56. The close temporal proximity between Coleman's FMLA leave and termination and the comments by Coleman's supervisor create an inference of causality. Thus, the Court concludes that Coleman has sufficiently pled a claim of FMLA retaliation.

B.  Claims under the ADA and the PFPO[1]

In its Motion, Amerihealth argues that Coleman has not adequately pled claims of discrimination and retaliation under the ADA and the PFPO (Philadelphia Fair Practices Ordinance). The Court disagrees.

*1.  Discrimination Claims*

To state a claim for discrimination under the ADA and the PFPO, a plaintiff must allege that "he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

Amerihealth argues that Coleman does not meet the definition of a "disabled person" under the ADA.[2] "Under the [ADA], an individual is defined as disabled if he has (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) is regarded as having such an impairment." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002). Coleman alleges that his stutter and digestive issues substantially limit several major life activities, including eating, speaking, communicating, working, and the operation of the major bodily functions of his digestive system, and have lasted longer than six months. Am. Compl. ¶¶ 42, 46. Such ailments can qualify as disabilities under the ADA. *See Medvic v. Compass Sign Co., LLC*, No. 10-5222, 2011 WL 3513499, at *5 (E.D. Pa. Aug. 10, 2011) (collecting cases on stuttering as an impairment under the ADA); *Maziarka v. Mills Fleet Farm*, 245 F.3d 675 (8th Cir. 2001) (holding that debilitating digestive issues can be an impairment under the ADA). Because Coleman's stutter and digestive issues may qualify him as a "disabled person," the

---

[1] Claims arising under the ADA and the PFPO are analyzed under the same legal framework. *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016).
[2] At this stage, Amerihealth does not dispute that Coleman was qualified for his position or that he suffered an adverse employment decision as a result of alleged discrimination.

Court will not dismiss his discrimination claims under the ADA and the PFPO at this early stage of the proceedings.

### 2. *Retaliation Claims*

To state a claim for retaliation under the ADA and the PFPO, a plaintiff must allege that (1) he engaged in a protected activity; (2) the employer took an adverse action against him after or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). Amerihealth contends that Coleman does not allege that Amerihealth took an adverse action against him because he was permitted to take leave. As noted above in the discussion on Coleman's retaliation claim under the FMLA, Coleman alleges that he was criticized for taking leave prior to his termination and was denied two promotions. Am. Compl. ¶ 15, n.1. Additionally, he avers that his request to work from home due to his medical issues was denied. Am. Compl. ¶ 51. At this stage of the case, Coleman has sufficiently pled a claim for retaliation under the ADA and the PFPO.

### C. Gender/Sexual Orientation Claim under Title VII

In its Motion to Dismiss, Amerihealth contends that Coleman has not adequately pled a gender stereotyping sex discrimination claim under Title VII and that a sexual orientation discrimination claim under Title VII is not actionable. The Court agrees.

The use of gay slurs indicates that a "claim is based upon discrimination that is motivated by perceived sexual orientation." *Kay v. Indep. Blue Cross*, 142 F. App'x 48, 51 (3d Cir. 2005). Coleman alleges that Johns referred to him using a gay slur and stated that his "hair looks gay." Am. Compl. ¶ 18. These comments culminated in two physical assaults. Am. Compl. ¶ 20. Coleman also alleges that his supervisors spread a false rumor that he was romantically involved with his direct male supervisor and "ma[de] derogatory comments to and about Coleman regarding his gender/sexual orientation." Am. Compl. ¶ 30. Such comments are unacceptable.

7

However, while Coleman states in his Amended Complaint that he was subjected to "repeated derogatory comments regarding his gender/sexual orientation and/or the perception that he acted effeminate and did not exhibit stereotypically male traits," he provides no factual allegations about comments regarding "the perception that he acted effeminate." Am. Compl. ¶ 18. Taking the nonconclusory factual allegations contained in Coleman's Amended Complaint as true, the Court concludes that Coleman has a pled a sexual orientation claim, not a sex stereotyping claim.

The Court must next address whether sexual orientation claims are cognizable under Title VII. In *Bibby v. Philadelphia Coca Cola Bottling Company*, issued in 2001, the United States Court of Appeals for the Third Circuit held that "Title VII does not prohibit discrimination based on sexual orientation." 260 F.3d 257, 261 (3d Cir. 2001). In the years since that opinion was issued, the United States Supreme Court recognized that same-sex couples have the constitutional right to marry. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015) ("If rights were defined by who exercised them in the past, then received practices could serve as their own continued justification and new groups could not invoke rights once denied. This Court has rejected that approach, both with respect to the right to marry and the rights of gays and lesbians."). In an opinion issued on April 4, 2017, the United States Court of Appeals for the Seventh Circuit reexamined its interpretation of Title VII and determined that discrimination on the basis of sexual orientation is a form of sex discrimination. *Hively v. Ivy Tech Cmty. Coll. of Ind.*, __ F.3d ___, No. 15-1720, 2017 WL 1230393, at *1 (7th Cir. April 4, 2017);[3] *see also U.S. E.E.O.C. v. Scott Med. Health Ctr., P.C.*, __ F. Supp. 3d __, No. 16-225, 2016 WL 6569233,

---

[3] Discrimination on the basis of sexual orientation can also be understood as discrimination because of sex under three distinct theories. *See Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 207 (2d Cir. 2017) (Katzmann, C.J., *concurring*) ("The EEOC and other advocates have articulated three ways that gay, lesbian, or bisexual plaintiffs could [demonstrate discrimination on the basis of sex]. First, plaintiffs could demonstrate that if they had engaged in identical conduct but been of the opposite sex, they would not have been discriminated against. Second, plaintiffs could demonstrate that they were discriminated against due to the sex of their associates. Finally, plaintiffs could demonstrate that they were discriminated against because they do not conform to some gender stereotype, including the stereotype that men should be exclusively attracted to women and women should be exclusively attracted to men.").

at *6 (W.D. Pa. November 4, 2016) ("There is no more obvious form of sex stereotyping than making a determination that a person should conform to heterosexuality."); *Baldwin v. Anthony Foxx, Sec'y, Dep't of Transp.*, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *10 (EEOC July 16, 2015) (holding that "allegations of discrimination on the basis of sexual orientation necessarily state a claim of discrimination on the basis of sex.").

While this Court is bound by Third Circuit precedent to dismiss Coleman's claim for sexual orientation discrimination under Title VII with prejudice, it does so with the recognition that "the nature of injustice is that we may not always see it in our times," *Obergefell*, 135 S. Ct. at 2598. The Court dismisses Coleman's gender stereotyping claim under Title VII without prejudice to his right to file and serve a second amended complaint in support of his gender stereotyping claim within twenty days if warranted by the facts and the applicable law set forth in this Memorandum.

## IV. CONCLUSION

The Court denies Amerihealth's Motion to Dismiss as to Coleman's claims for retaliation under the FMLA, discrimination under the ADA and the PFPO, and retaliation under the ADA and the PFPO. The Court grants Amerihealth's Motion to Dismiss as to Coleman's claim for sexual orientation discrimination under Title VII with prejudice. The Court grants Amerihealth's Motion to Dismiss as to Coleman's claim for sex discrimination, specifically gender stereotyping, under Title VII without prejudice to Coleman's right to file and serve a second amended complaint within twenty days if warranted by the facts and the applicable law set forth in this Memorandum. Because the Court declines to dismiss a number of Coleman's federal claims, it denies that part of Amerihealth's Motion that seeks dismissal of Coleman's PFPO claims pursuant to Federal Rule of Civil Procedure 12(b)(1).[4]

An appropriate order follows.

---

[4] Amerihealth contends that all of Coleman's federal claims are subject to dismissal and, thus, the Court does not have jurisdiction over Coleman's PFPO claims.